**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAURELS OF THE LAKE ORION, LLC
and C. LANE MALLY, LLC,

        Plaintiffs,

v.                            Case No. 19-11543

FIRST NATIONAL ORION LOAN, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
AND ORDERING ADDITIONAL BRIEFING ON THE CALCULATION OF
DEFENDANT'S ATTORNEYS' FEES**

**I. INTRODUCTION**

Plaintiffs Laurels of the Lake Orion, LLC and C. Lane Mally, LLC secured a

multimillion-dollar loan from Defendant First National Orion Loan, LLC to fund the

construction of an assisted living facility in Orion Township. Defendant foreclosed on the

loan, and Plaintiffs bring this suit alleging claims for breach of contract and tortious

interference with a business relationship. They seek monetary damages and declaratory

and injunctive relief.

Plaintiffs paint Defendant as a "predatory lender" who unjustifiably foreclosed on

the loan. Defendant argues that Plaintiffs committed numerous events of default after

which it elected to pursue its contractual remedy of foreclosure. Defendant filed a

counterclaim against Plaintiffs and a third-party complaint against C. Lane Mally, in his

individual capacity, for the collection of fees and costs associated with the instant

litigation.

Pending before the court are two motions. The first is Defendants' motion for judgment on the pleadings, or in the alternative a motion for summary judgment. The second is Plaintiffs' motion to dismiss (or, alternatively, for summary judgment) on Defendant's counterclaim and third-party complaint. Both motions have been fully briefed, and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained below, the court will grant Defendant's motion and will deny Plaintiffs' motion. Additionally, the court will grant summary judgment for Defendant on its counterclaim and third-party complaint and will order further briefing on the issue of calculating attorneys' fees.

## II. BACKGROUND

### A. Factual Background[1]

**1. Loan Documents**

Plaintiffs are single-member limited liability companies owned by C. Lane Mally. On October 31, 2018, the parties executed a Construction and End Mortgage Note (the "Note") for a maximum principal amount of $7,700,000 to construct an assisted living facility at 3451 W. Clarkston Road, Lake Orion, Michigan. (ECF No. 14-2.) The parties also executed a Commercial Mortgage to secure the Note (ECF No. 14-3) and signed a Construction and End Loan Agreement (the "Loan Agreement"). (ECF No. 14-4.) The court will collectively refer to these documents as the "loan documents." In addition to

---

[1] The court reminds counsel that pursuant to the court's scheduling order, motions for summary judgment should include a "Statement of Material Facts" section organized in numbered paragraphs. (ECF No. 8, PageID.305.)

the loan documents, C. Lane Mally signed a "Limited Guaranty Agreement" in which he personally guaranteed the loan documents. (ECF No. 17-1.)

The Note authorizes Defendant to make advances of the principal to Plaintiffs at the request of Plaintiffs and subject to the terms of the Loan Agreement. The Loan Agreement requires Plaintiffs to submit draw requests, accompanied by supporting documentation, to receive advances. (ECF No. 14-4, PageID.421.)

The loan documents allow Defendant to pursue foreclosure upon an event of default. (ECF No. 1-2, PageID.49.) Both the Mortgage and the Loan Agreement describe a variety of events which constitute default. Most significant in this proceeding is "any representation, warranty, certificate, financial statement or other information made or given by [Plaintiffs] . . . to [Defendant that] is materially incorrect or misleading or omits to state any fact necessary to keep the statement from being materially misleading." (ECF No. 14-3, PageID.395.) The Mortgage also states that the failure of Plaintiffs to provide Defendant with any information requested by Defendant within ten days of the request constitutes an event of default. (*Id.* at PageID.394.) Similarly, § 7.01(d) of the Loan Agreement states that Plaintiffs' failure to provide Defendant with any requested information within ten days of Defendant's request constitutes an event of default, and §7.01(g) of the Loan Agreement states that Plaintiffs default by providing "materially incorrect or misleading" information to Defendant. (ECF No. 14-4, PageID.446–47.)

None of the loan documents require Defendant to provide Plaintiffs with notice of default or an opportunity to cure the default before pursuing any of its remedies; the

Loan Agreement states that Defendant may pursue any of its remedies, including foreclosure, upon the occurrence of an event of default "without prior notice" to Plaintiffs. (ECF No. 14-4, PageID.449.)

**2. Alleged Events of Default**

Plaintiffs made three draw requests on the loan. The first on October 31, 2018, the closing date for the loan, the second approximately one month later, and the third on January 31, 2019. (ECF No. 1-2, PageID.17; ECF No. 14-5, PageID.469.) Defendant alleges that information provided by Plaintiffs for the third draw request contained several materially false statements, each consisting an event of default.

First, Defendant asserts that Plaintiffs falsely stated that a particular check (no. 1337) was paid to "F.E.B. Construction Services" for "project management supervision" at the property. (ECF No. 14, PageID.341; ECF No. 14-6, PageID.519–521.) Second, Defendant contends that Plaintiffs falsely certified that they had rented a "mobile mini" field office trailer for the construction site. (ECF No. 14, PageID.342.) And third, Defendant asserts that Plaintiffs falsely represented that they had purchased masonry materials which were delivered to the job site. (*Id.*; ECF No. 14-6, PageID.543.) Plaintiffs deny the falsity of these statements. (ECF No. 18, PageID.646.)

On February 4, 2019, Defendant contacted Plaintiffs about the information they provided with their third draw request and asked for additional, substantiating documentation. (ECF No. 14-7, PageID.547.) Plaintiffs did not respond to Defendant's request until February 19, 2019—over ten days after Defendant made the request— which Defendant argues is another event of default. (ECF No. 14-8.) Furthermore,

Defendant contends that Plaintiffs' eventual response contained new misrepresentations that constitute additional events of default, specifically related to Plaintiffs' assertion that certain materials—the mobile mini trailer and concrete block foundation materials from T. Strat Construction—had been delivered to the job site. (ECF No. 14, PageID.344.) Defendant then elected to pursue foreclosure and sent the first letter of default to Plaintiffs on February 22, 2019. The letter of default demanded full payment of the Note by February 25, 2019, and listed three events of default: (1) failure to continue construction for more than ten days, (2) submission of materially incorrect or misleading information, and (3) submission of inaccurate evidence of payment. (ECF No. 1-2, PageID.65–66.)

The parties discussed the letter of default on February 25, 2019. During the call, counsel for Defendant requested financial documentation related to the events of default. Two days later, Plaintiffs submitted more information to Defendant via email. Plaintiffs stated in that email that the "irregularities" cited by Defendant are "nothing more than a few minor misunderstandings." (ECF No. 1-2, PageID.71.) Plaintiffs attempted to explain the "irregularities" regarding payment for the mobile mini trailer but acknowledged that their earlier communications contained a "mistake." (*Id.*)

Plaintiffs attempted to provide further "clarification" on the third draw request in the following days. In one attempt—an email dated March 1, 2019—Plaintiffs described the circumstances pertaining to cancelled check number 1337, for which Defendant had requested more information. (ECF No. 1-2, PageID.73.) Defendant argues that

Plaintiffs' statements in this email constitute yet another event of default. (ECF No. 14, PageID.349–50.)

On March 6, 2019, Defendant sent a second letter of default to Plaintiffs and demanded payment of the Note in full based on eight additional alleged incidents of default. (ECF No. 1-2, PageID.76–77.) Defendant's motion, however, focuses on one particular event: Plaintiffs' failure to disclose a letter from the Charter Township of Orion dated February 22, 2019 which informed Plaintiffs of issues with the project's foundation discovered by the Township during an inspection. (ECF No. 14, PageID.350; ECF No. 14-12, PageID.564.) Defendant asserts that the delivery of this letter constitutes an event of default and that Plaintiffs' failure to disclose the letter to Defendant constitutes another, separate event of default. (ECF No. 14, PageID.350.) Plaintiffs do not dispute that they failed to inform Defendant of the February 22, 2019 letter from the Township of Orion. Plaintiffs point out that on April 4, 2019, they received another letter from the Township stating that the foundation need not be completely removed. (ECF No. 18, PageID.647–48; ECF No. 18-9, PageID.732.)

### 3. Foreclosure Proceedings

After Plaintiffs failed to pay the Note in full, Defendant began foreclosure proceedings in early April 2019 by publishing advertisements in local papers. On May 24, 2019, Plaintiffs filed the instant action in Wayne County Court to stop the impending foreclosure sale. The court denied Plaintiffs' request for injunctive relief, and the Oakland County Sheriff's sale occurred on May 28, 2019. Defendant submitted the winning bid for the foreclosure sale. (ECF No. 14-14.)

## B. Procedural Background

On the same day of the Sherriff's sale, Defendant removed the case to this court. On August 7, 2019, Plaintiffs redeemed the property by obtaining a new loan from a new lender (ECF No. 14-15) and now concede that the redemption moots their claims for injunctive and declaratory relief. (ECF No. 18, PageID.643.)

After a period of discovery, Defendant filed a motion for judgment on the pleadings, or summary judgment in the alternative, on Plaintiffs' remaining claims for breach of contract and tortious interference. Defendant also brings a counterclaim against Plaintiffs for breach of contract, seeking to collect fees and costs including attorneys' fees associated with defending the instant action. Defendant finally brings a third-party complaint against C. Lane Mally in his individual capacity seeking to enforce the personal guarantee. Plaintiffs filed a motion to dismiss, or for summary judgment in the alternative, on Defendant's third-party complaint and counterclaim. (ECF No. 20.) In response to that motion, Defendant argues that Plaintiffs' are not entitled to summary judgment and that, in fact, summary judgment should be granted in its favor as the nonmovant pursuant to Federal Rule of Civil Procedure 56(f) if the court rules in its favor on its dispositive motion. (ECF No. 23, PageID.856.)

Before finalizing this opinion, the court provided notice to Plaintiffs under Rule 56(f) to alert them to the possibility that the court may rule in favor of Defendant on Plaintiffs' motion. (ECF No. 24.) Plaintiffs filed a combined reply to their motion for summary judgment and response to the court's Rule 56(f) notice. (ECF No. 25.)

## III. STANDARD

## A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## B. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

pleadings." A court reviewing a motion for judgment on the pleadings assumes that all well-pleaded factual allegations of the nonmoving party are true; but the court need not accept as true "legal conclusions or unwarranted factual inferences." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (internal quotation omitted). Judgment on the pleadings is awarded "only if the moving party is . . . clearly entitled to judgment." *Id.* (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The court is to grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)).

### C. Rule 56

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment, only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the

nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).
The burden then shifts to the nonmoving party to set forth enough admissible evidence
to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S.
at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all
factual disputes are material. A fact is "material" for purposes of summary judgment
when proof of that fact would establish or refute an essential element of the claim "and
would affect the application of the governing law to the rights of the parties." *Rachells v.
Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

## IV. DISCUSSION

Plaintiffs' complaint contains four claims: breach of contract (Count I), declaratory
relief (count II), tortious interference (Count III), and request for temporary restraining
order (Count IV). Plaintiffs admit that their claims for injunctive relief (Counts II, IV)
became moot upon their redemption of the property. (ECF No. 18, PageID.643.) The
court will begin by addressing Plaintiffs' remaining claims, which Defendant challenges
in its motion, and then turn to Plaintiffs' motion addressing Defendant's counterclaim for
breach of contract and third-party complaint against C. Lane Mally.

### A. Plaintiffs' Claims

### 1. Breach of Contract (Count I)

Plaintiffs allege that Defendant breached the loan documents by wrongfully
initiating foreclosure proceedings without just cause and without providing Plaintiffs with

proper notice. (ECF No. 1-2, PageID.21.) Defendant argues that Plaintiffs committed several events of default which justified the foreclosure. The court analyzes Plaintiffs' breach of contract claim under Rule 56 because Defendant's response relies on materials outside of the pleadings. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

First, Defendant points to the misrepresentation made by Plaintiffs in the third draw request: that check number 1337 was paid to "F.E.B. Construction Services" for "project management and supervision" when, in fact, Plaintiffs admit that they voided that check. (ECF No. 1-2, PageID.73; ECF No. 14, PageID.357.)

Second, Defendant argues that Plaintiffs misrepresented that they rented a mobile mini field office trailer for the construction site when, in reality, Plaintiffs did not install the mobile mini on the job site as required by the § 2.06(b) of the Loan Agreement. (ECF No. 1-2, PageID.71; ECF No. 14-4, PageID.421.)

Third, Defendant argues that Plaintiffs falsely stated that they paid for the mobile mini with a check when Plaintiffs paid by automatic withdrawal. (ECF No. 1-2, PageID.71.)

Fourth, Defendant asserts that Plaintiffs made a material misrepresentation by stating that they purchased and confirmed delivery of masonry foundation material from T. Strat when the materials were not delivered to the job site. (ECF No. 14-6, PageID.544–45; ECF No. 1-2, PageID.71.)

Fifth, Defendant argues that Plaintiffs made materially false statements in their third draw request related to payments for certain vendors, which Plaintiffs later

admitted were "mistakes." (ECF No. 14, PageID.358; ECF No. 14-7, PageID.549.)

And sixth, Defendant argues that Plaintiffs committed an event of default by failing to provide requested information to Defendant within ten days. (ECF No. 14-8, PageID.552.)

Plaintiffs respond that a question of fact remains as to whether the alleged breaches were "material" and also assert that they eventually cured any alleged breach. While Plaintiffs are correct that the Loan Agreement states that default is triggered by the submission of "*materially* incorrect or misleading" information, the court need not determine whether the events cited by Defendant amount to "material" misrepresentations to grant Defendant's motion.

The facts are undisputed that Plaintiffs committed an event of default by failing to timely provide information to Defendant upon their request. Both the Loan Agreement and Note explicitly state that the failure to provide Defendant with information requested within ten days amounts to an event of default. (ECF No. 14-3, PageID.394; ECF No. 14-4, PageID.446.) Email communications attached to Defendant's motion—which were not part of the pleadings—demonstrate that Plaintiffs failed to respond to Defendant's request for more information related to Plaintiffs' third draw request within ten days. (ECF No. 14-7; 14-8.) Plaintiffs do not dispute the lateness of their response.

Michigan contract law is clear;"[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). Here, the loan documents plainly state that Plaintiffs' failure to provide information to Defendant within ten days of

a request constitutes an event of default for which Defendant may elect to pursue its contractual remedies, including foreclosure. The loan documents do not require Defendant to provide notice to Plaintiffs of an event of default, nor do the loan documents require Defendant to provide Plaintiffs with the opportunity to cure a breach before declaring default.[2]

Plaintiffs committed a material breach as a matter of law by failing to provide Defendant with the requested information within ten days of the request. Plaintiffs offer no specific defense on this point. Instead, they make passing references to the implied covenant of good faith. But "the obligation of good faith cannot be employed to override express contract terms" nor can it be used "as a tool for rewriting the parties' agreement based on unspecified notions of fairness." *Verderese v. Q Lube, Inc.*, No. 199084, 1998 WL 1991608, at *4 (Mich. Ct. App. May 26, 1998) (internal citations omitted); *see also Bank of Am., NA v. Fid. Nat'l Title Ins. Co.*, 892 N.W.2d 467, 480 (Mich. Ct. App. 2016) (quoting *Van Arnem Co. v. Mfr. Hanover Leasing Corp.*, 776 F. Supp. 1220, 1223 (E.D. Mich. 1991) ("The implied covenant of good faith under Michigan law, as well as under the law of other jurisdictions having persuasive effect, neither overrides nor replaces any express contractual term.")).

The court must hold Plaintiffs to account for the contractual terms which they negotiated and to which they assented. The loan documents could not be more clear in

---

[2] Plaintiffs reference, without citation to any of the governing documents, the failure of Defendant to provide them with the opportunity to "cure" their alleged breaches. (ECF No. 18, PageID.651; ECF No. 25, PageID.865.) The plain language of the loan documents provides no such right to cure.

stating that Plaintiffs' failure to provide Defendant with its requested documentation within ten days amounts to an event of default. Plaintiffs do not dispute that they failed to respond to Defendant's request for information related to their third draw request within ten days. This action constitutes an event of default under the parties' agreement for which Defendant had the contractual right to pursue foreclosure, independent of the various other breaches alleged by Defendant. Thus, the court need not address whether the other events described by Defendant amount to "material" misrepresentations because Plaintiffs undeniably breached the agreement in failing to timely respond. Accordingly, the court will grant Defendant's motion for summary judgment on Plaintiffs' breach of contract claim.

## 2. Tortious Interference

In support of their tortious interference claim, Plaintiffs allege that Defendant intentionally interfered with their existing business relationships with unspecified "contractors, management company and prospective residents" by pursuing foreclosure. (ECF No. 1-2, PageID.23.) Defendant argues that Plaintiffs' allegations are insufficient to state a claim and, in the alternative, that it did not "intentionally interfere" with any of Plaintiffs' expectancies by exercising its contractual right of foreclosure upon breach. (ECF No. 14, PageID.361.)

To state a claim for tortious interference with a business relationship under Michigan law, Plaintiffs must allege "[1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach

or termination of the relationship or expectancy, [4] and resultant damage to the plaintiff." *Cedroni Assocs. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1, 3 (Mich. 2012) (internal citations omitted). The third element of intentional interference "requires more than just purposeful or knowing behavior on the part of the defendant." *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003). Plaintiffs must also allege "that the interference was either (1) a per se wrongful act or (2) a lawful act done 'with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *Id.* (quoting *Clark v. W. Shore Hosp.*, 16 F. App'x 421, 430 (6th Cir. 2001)). Furthermore, "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Id.* (quoting *BPS Clinical Lab. v. Blue Cross & Blue Shield*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996)).

Even assuming that Plaintiffs sufficiently alleged the existence of a valid business expectancy and that Defendant knew of such an expectancy, Plaintiffs' claim cannot survive summary judgment. Plaintiffs do not allege that Defendant acted with malice and, as explained above, Defendant's election to foreclose after Plaintiff' breached the parties' agreement by failing to submit timely information is not a "per se wrongful" act. Sixth Circuit precedent analyzing Michigan tort law informs this decision.

In *Clark v. W. Shore Hosp.,* the court affirmed the Rule 12(b)(6) dismissal of the plaintiff's tortious interference claim. *Clark*, 16 F. App'x at 431. The case involved plaintiff, a physician, being fired pursuant to the termination clause of his pathologist agreement with the hospital. The Sixth Circuit affirmed the district court's dismissal of

15

the tortious interference claim because the plaintiff's allegations failed to satisfy the "intentional interference" element. The court explained that the plaintiff did not allege that "the 'interference' was done with malicious intention" and that the plaintiff's allegation that his termination pursuant to the contract was "unjustified in law cannot withstand critical analysis." *Id.* at 431. Two years later, the Sixth Circuit relied on *Clark* as an alternative basis for affirming the dismissal of a tortious interference claim in *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.* The *Wausau* case involved a similar set of facts; one party exercised its contractual right to terminate a business relationship and the terminated party brought a tortious interference claim. The court explained that "[b]ecause Wausau was authorized to seek cancellation of the policy and did so in the manner dictated by the Facility's own procedures, its actions are justified and are not actionable as a matter of law, pursuant to a tortious interference with a business relationship claim." *Id.* at 405. The facts of the instant case squarely align with the reasoning of the Sixth Circuit in *Wausau* and *Clark*.

Plaintiffs do not allege that Defendant acted with "malice" but rather that Defendant "improperly interfered" with its existing relationships. (ECF No. 1-2, PageID.23.) *Wausua* and *Clark* make clear that a party cannot survive summary judgment on a tortious interference claim based on actions authorized by the parties' governing agreement. The court already concluded that Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs committed an undeniable event of default for which the loan documents authorized Defendant to pursue foreclosure. The court's determination that Defendant acted within its contractual

16

authority necessarily dooms Plaintiffs' tortious interference claim because Defendant's conduct—undertaken for the legitimate business purpose of protecting its contractual rights— is, as a matter of law, not a "per se wrongful" act. The court will grant Defendant's motion for summary judgment on Plaintiffs' tort claim.

### B. Defendant's Claims

Defendant seeks to recoup the costs it has incurred in defending this action, including attorneys' fees. Defendant brings one claim for breach of contract against Plaintiffs based on their failure to reimburse Defendant for attorneys' fees pursuant to § 8.07 and § 9.04 of the Loan Agreement and one claim against C. Lane Mally—the owner of Plaintiffs—in his individual capacity to enforce his personal guarantee of the loan documents. Plaintiffs move to dismiss both counts based on the election of remedies doctrine. They argue that Defendant cannot recover attorneys' fees at this stage in the litigation because Defendant already received payment for attorneys' fees when Plaintiffs redeemed the property. Defendant responds that the election of remedies doctrine does not apply because Defendant is attempting to recover attorneys' fees associated with defending the instant action, distinct from the fees it recovered when Plaintiffs redeemed the property. Defendant also urges the court to grant summary judgment in its favor as the nonmovant pursuant to Rule 56(f).

The court agrees with Defendant that Plaintiffs' redemption does not bar Defendant from recovering attorneys' fees associated with defending this post-redemption litigation, noting that Defendant has continued to acquire new costs. The election of remedies doctrine prevents "double recovery for a single injury." *Jim-Bob,*

17

*Inc. v. Mehling*, 443 N.W.2d 451, 460 (Mich. Ct. App. 1989). The "injury" sustained by

Defendant in pursuing foreclosure is distinct from the "injury" it suffers in defending the

instant case following foreclosure. Defendant's current request for attorneys' fees is not

inconsistent with its earlier decision to pursue foreclosure because these actions do not

involve "the negation or repudiation of the other." *Id.* at 460 (quoting *Prod. Finishing*

*Corp. v. Shields*, 405 N.W.2d 171, 178 (Mich. Ct. App. 1987). The cases relied on by

Plaintiffs involve a party attempting to recover twice for the *same* injury. They are

therefore distinguishable.

The plain language of  the Loan Agreement states:

8.07. <u>Costs and Expenses Upon Default</u>. Debtor shall pay to Lender on demand any and all expenses, including reasonable attorneys' fees and legal expenses, incurred or paid by Lender in protecting or enforcing its rights upon or under the Obligations.

9.04. <u>Expenses During Administration of Loan</u> . . . All advances, costs and expenses (including reasonable attorney's fees) made, paid or incurred by Lender under this Agreement for the protection of Lender's security or rights in connection with the Collateral or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation to which Lender or the holder of the Note may become involved by reason of or arising out of this Agreement (including any action by Debtor against Lender or Lender's affiliates), or to carry out any Obligation of Debtor, shall be paid by Debtor to Lender upon demand with interest from the date of advance or payment, until repaid, at the maximum default rate provided in the Note. All sums payable by Debtor to Lender under this Section shall be additional Obligations of Debtor, secured by the lien of this Agreement. Nothing in this Section shall require Lender to incur any cost or expense or taken any such action.

(ECF No. 14-4, PageID.453–54.) Section 9.04 of the agreement does not force

Defendant to choose between pursuing foreclosure *or* recovering the costs in defending

a lawsuit; the use of the sweeping adjective "all" means just what it says: that Defendant

may recover *all* such costs.

Plaintiffs decided to pursue this litigation after redeeming the property. The Loan Agreement makes clear that Plaintiffs bear the responsibility to cover Defendant's costs incurred in any litigation "arising out of this Agreement." (*Id.*) This language certainly extends to the instant matter in which Plaintiffs allege that Defendant breached that Agreement. The attorneys' fees incurred by Defendant in defending the instant action squarely fall within the category of expenses for which Plaintiffs, and by virtue of signing the personal guarantee Mally, bear responsibility.

In granting Defendant's motion for summary judgment, the court determined Defendant had legitimate grounds to declare Plaintiffs' in default and pursue foreclosure. Plaintiffs' decision to continue this lawsuit after it redeemed the instant property caused Defendant to incur attorneys' fees separate from those it incurred during the foreclosure. The Loan Agreement authorizes Defendant to recover both groups of costs, and it is undisputed that Plaintiffs have failed to pay Defendant for these costs.

In a final effort, Plaintiffs argue that the court should exercise its equitable powers and bar Defendant's recovery of costs. (ECF No. 25, PageID.869.) The court declines to do so and will hold Plaintiffs to the benefit of their bargain. The court will deny Plaintiffs' motion and rule in favor of Defendant as the nonmoving party on the counterclaim and third-party complaint. The court will set deadlines for additional briefing for the determination of the precise amount owed to Defendant.

## V. CONCLUSION

Plaintiffs' remaining claims for breach of contract and tortious interference cannot survive Defendant's motion. The parties' governing loan documents required Plaintiffs to submit information requested by Defendant within ten days. Plaintiffs' failure to do so constitutes a breach of the parties' agreement and an event of default for which Defendant, at its election, was contractually entitled to pursue foreclosure. Thus, the court will grant summary judgment in favor of Defendant on Plaintiffs' breach of contract claim. The court will also grant summary judgment for Defendant on Plaintiffs' tortious interference claim, which arises from the foreclosure, because Defendant's pursuit of its contractual remedy does not, as a matter of law, amount to "intentional inference" with Plaintiffs' business expectancies. Finally, the court will grant summary judgment in favor of Defendant as the nonmoving party on the claims raised in its counterclaim and third-party complaint. The Loan Agreement authorizes Defendant to collect costs incurred in defending this action, separate from and in addition to the costs incurred during foreclosure. The court will order additional briefing to address the calculation of the exact amount owed to Defendant. Accordingly,

IT IS ORDERED that Defendant's motion (ECF No. 14) is GRANTED. The court awards summary judgment in favor of Defendant on Count I (Breach of Contract) and Count III (tortious interference). Count II (declaratory relief) and Count IV (injunctive relief) are MOOT BY AGREEMENT.

IT IS FURTHER ORDERED that Plaintiffs' motion (ECF No. 20) is DENIED. The court ALTERNATIVELY GRANTS summary judgment for Defendant as the nonmovant

on the counterclaim and third-party complaint.

Finally, IT IS ORDERED that the parties MEET AND CONFER to attempt to reach agreement on quantification of fees and costs, and that the parties file a joint statement on or before **May 22, 2020** as to the general status of discussions, e.g., whether they are ongoing or halted, likely or unlikely to be fruitful, etc. Counsel will avoid mention of the financial details of unresolved negotiations. In the absence of agreement by May 22, 2020, IT IS ORDERED that Defendant submit its brief addressing the calculation of attorneys' fees and costs by **June 5, 2020**. Plaintiffs' response is due by **June 26, 2020**. Defendant may file a reply by **June 3, 2020**.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 14, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 14, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\HEK\Civil\19-11543.LAURELS.material.breach.MSJ.HEK.2.RHC.2.docx